UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,        Case No. 25-20393

-v-        Hon. Robert J. White

EDWARD REDDING,

        Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Edward Redding is a danger to the community. He is a violent felon who continues to possess firearms despite multiple prior prison terms and parole violations. He has not been deterred.

More concerning is that in April this year, Redding likely murdered his ex-girlfriend, her mother, and her 9-year-old niece. In April 2025, police arrested Redding after they found the victim's bodies in a vehicle that had been set on fire in Detroit. Video showed Redding's Saturn VUE traveling in tandem with the victim's vehicle shortly before the fire. Later that day, police found the Saturn VUE, with Redding behind the wheel. Predictably, he fled, endangering the public, but police captured Redding after he crashed. They found a revolver in a

brown bag on the front passenger floorboard. The murder cases are under investigation by the Detroit Homicide Task Force and Wayne County Prosecutor's Office. Additional evidence has since been obtained connecting Redding to the murders, and further testing is being conducted based on that new information. Charges have not yet been filed.

Here, Redding stands convicted of possessing a different firearm. In September 2022, Redding carried a loaded gun in public, two months after he was paroled. Clearly not yet ready for release to the community, Redding was returned to prison. State charges were later dismissed without prejudice at the preliminary exam for "insufficient evidence" and never refiled. As part of his plea here, the federal government agreed not to charge Redding for the firearm from his arrest in April 2025.

The sentencing factors under 18 U.S.C. § 3553(a), particularly the history and characteristics of the defendant and the need to protect the public from further crimes of the defendant, strongly weigh in favor of this Court imposing its own independent punishment for this offense. Given Redding's extreme danger to the community and his repeated

possession of firearms as a violent felon, the government recommends the Court impose a sentence of 37 months, the top of the guideline range.

## STATEMENT OF FACTS

### A. September 28, 2022 – Firearm Arrest (Count of Conviction)

On September 28, 2022, just two months after Redding was paroled after serving 12 years for carjacking, armed robbery, and felony firearm, Redding walked down the street in Detroit carrying a firearm in his pants pocket. Police officers saw him and noticed a bulge in his pocket. As the officers turned their car around, they saw him adjusting his waistband and walk around a parked van nearby. The officers stopped Redding, patted him down, and did not find a gun. They checked around the van and found the loaded 9mm Taurus handgun that Redding discarded.

(PSR at ¶10).

### B. April 6, 2025 - Triple Homicide / Fleeing / Firearm Arrest

At 5:54 a.m. on April 6, 2025, Detroit Police responded to a 911 call of a car on fire. On arrival, they found a car belonging to Redding's ex-girlfriend engulfed in flames. The bodies of Redding's ex-girlfriend,

her mother, and her 9-year-old niece were found inside. The three had been brutally murdered prior to the fire being set.

Officers reviewed surveillance video in the area. Video captured the victim's car and Redding's Saturn VUE traveling in tandem heading towards the scene of the fire, and then Redding's Saturn VUE driving away from the scene alone after the 911 call came in.

Police began looking for Redding's car. Detroit Police first spotted the car around 4:00 p.m. on West Jefferson near the city of Ecorse, when it fled from them at a high rate of speed. A short time later, Michigan State Police troopers found the car headed north on I-75 towards Fort Street. Redding fled from the trooper in an extremely dangerous manner, running multiple red lights at busy intersections, driving the wrong way on Fort Street, and nearly striking other vehicles multiple times before crashing after getting a flat tire. (Ex. 1 – Police Cruiser Video).[1]

---

[1] The government filed a motion for leave to file Exhibit 1 via the media upload ECF feature. (ECF No. 21). If that motion is not granted, the government intends to offer the same video as an exhibit during the sentencing hearing.

Redding ran from the car on foot. Troopers tackled him and took him into custody. They found a revolver inside a brown bag on the passenger side floorboard of Redding's car.

After his arrest, detectives interviewed Redding. They noticed a serious injury to one of his hands, which he claimed happened when climbing a fence a few days earlier. They also confronted him about a recent domestic incident involving his ex-girlfriend, (*See* PSR at ¶28, pg. 9–10, Adjustment to Supervision), and the fact that no one had seen or heard from her, her mother, or her 9-year-old niece recently. Redding denied the domestic incident and denied any knowledge of their whereabouts.

(PSR at ¶35; Complaint, ECF No. 1, PageID.3–7).

In the months since his arrest, the Detroit Homicide Task Force and Wayne County Prosecutor's Office have continued to investigate these murders. Additional evidence has since been obtained connecting Redding to the murders, and further testing is being conducted based on that new information. Charges have not yet been filed for the murders.

## ADVISORY GUIDELINE RANGE

The United States Probation Department calculated Redding's guideline range as 30 to 37 months, based upon a total offense level of 17 and criminal history category of III. The government agrees with this guideline calculation.

## SECTION 3553(a) FACTORS

Through 18 U.S.C. § 3553(a), Congress provided the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. As explained below, these factors support a sentence at the top of the guideline range.

1. **The nature and circumstances of the offense, and the history and characteristics of the defendant.**

    A. *The nature and circumstances of the offense*

    Edward Redding cannot legally possess firearms. Yet here, just two short months after his release from prison after serving 12 years for multiple violent felonies, Redding carried a gun in September 2022. And after his release from prison in 2024, he again carried a gun in April 2025. Despite serving prior lengthy prison terms, Redding repeatedly chooses to carry guns. Thus, this offense is serious.

    Redding's violent criminal history and character make clear why he should not have guns. Redding has proven himself a danger to the community and unable to be trusted with firearms.

    The circumstances of the offense here, especially taking into account Redding's history, warrant a prison sentence at the top of the guideline range.

    B. *The history and characteristics of the defendant*

    Redding's history and characteristics also demonstrate that a prison sentence at the top of the guideline range is necessary here.

    In 2010, at 15, Redding was charged in two armed robberies and a carjacking committed a few days apart. (PSR at ¶¶28–29). He pled to

-7-

carjacking, armed robbery, and felony firearm. The other armed robbery charge was dismissed as part of his plea. Redding was sentenced to a total of 11-20 years in prison for the offense.

While in prison the first time, Redding racked up a laundry list of serious misconduct violations, including 15 counts of destruction/misuse of property, 5 counts of assault and battery (prisoner victim), 1 count of bribery of an employee, 2 counts of possession of stolen property/theft, 2 counts of assault and battery (staff victim), 9 counts of fighting, 1 count of assault resulting in serious physical injury (staff victim), and 2 counts of possession of a weapon. (PSR at ¶28). MDOC records show a consistent pattern of these violations throughout the entire time he was incarcerated. (Ex. 2, MDOC Misconduct Summary). He repeated similar misconduct upon his return to prison in 2023, including another misconduct violation for fighting. (*Id.*).

Redding was most recently paroled in July 2024. On March 14, 2025, Redding's ex-girlfriend reported to police that Redding broke into her home. She did not move forward with charges, and none were filed. (PSR at ¶28). On April 6, 2025, she was found murdered, along with her mother and 9-year-old niece. The murders remain under investigation,

but authorities have obtained evidence linking Redding to the murders and are actively continuing the investigation.

After finding video evidence showing Redding's car driving in tandem with the victim's car shortly before their bodies were found, police attempted to stop Redding while driving that car. Redding fled in a reckless and dangerous manner, endangering the public in his attempt to get away. And when he was finally arrested, police found another gun in the car.

The plea agreement in this case includes an agreement not to charge Redding for the April 2025 gun. This does not preclude the Court from considering his conduct in possessing that gun in sentencing here. *See United States v.* Pearson, 430 Fed.Appx. 431, 434–435 (6th Cir. 2011) (citing *United States v. White*, 551 F.3d 381 (6th Cir. 2008) and *United States v. Conway*, 513 F.3d 640, 646 (6th Cir. 2008)). The Sentencing Guidelines also follow the principle that dismissed charges in a plea are a valid consideration even for applying guideline enhancements. USSG § 6B1.2(a) ("[A] plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from

being considered under the [Relevant Conduct] provisions of §1B1.1. . . ."). If such conduct can be considered to apply sentencing enhancements under the Guidelines, it no doubt ought to be considered under § 3553(a). To an extent, these cases and the Guidelines elevate conduct a defendant avoids prosecution for under the terms of a plea agreement as compared to other "uncharged conduct." But as explained below, even ordinary "uncharged conduct" is fair game for the Court's consideration here.

    Likewise, the same goes for his flight from police and willingness to endanger the public. And even more the serious danger that Redding poses to the community as evidenced by the fact that he likely brutally and senselessly murdered his ex-girlfriend, her mother, and her 9-year-old niece, dumped their bodies in her car, and set the car on fire.

    In all likelihood, Redding will eventually face prosecution and, if convicted, substantial punishment for these murders. But that does not mean that this Court should not take all these facts and circumstances and the entire history and character of Redding into account when fashioning an appropriate sentence in this case. The Court may be a tempted to leave consideration of all this violent, dangerous, and deadly

conduct for another day, or another case. But that impulse is contrary to congressional directives. Indeed, "[t]he court, in determining the particular sentence to be imposed, *shall consider*…the history and characteristics of the defendant." 18 U.S.C. 3553(a)(1) (emphasis added). And, importantly,

> [i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation, any information* concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. U.S.S.G. § 1B1.4 (emphasis added).

Guideline section 1B1.4 is based on 18 U.S.C. § 3661, which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." As the commentary to § 1B1.4 explains: "Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence under the future guideline sentencing system." Taken together, the

> Guidelines and the statute explain that it is entirely appropriate—even required—that this Court consider Redding's

-11-

"background, character and conduct," which includes his violent history involving a triple homicide, armed robberies, fleeing from the police, and the use and possession of firearms, when fashioning a sentence that is "sufficient, but not greater than necessary."

In addition to the statute and the guideline, courts have reaffirmed that uncharged criminal activity is appropriately considered at sentencing. Courts start with the principle that "possession of the fullest information possible concerning the defendant's life and characteristics is highly relevant—if not essential—to the judge's selection of an appropriate sentence." *United States v. Alsante*, 812 F.3d 544, 547-8 (6th Cir. 2016) (internal quotations and citations omitted). Included in that analysis are criminal acts for which the defendant has not been prosecuted. *United States v. Hunter*, No. 23-11236, 2024 WL 3874219, at *3 (11th Cir. Aug. 20, 2024) ("Nor did the District Court err by considering Hunter's uncharged criminal conduct, as a sentencing court can rely on any reliable information in considering a defendant's background and character."). *United States v. Overby*, 838 F. App'x 966, 970 (6th Cir. 2021) ("sentencing judges 'exercise a wide discretion' in the types of evidence they may consider at sentencing, a principle that

Congress codified at 18 U.S.C. § 3661. This wide discretion permits consideration of uncharged conduct as long as the sentencing court is using 'reliable information.'") (internal citations omitted).

Given this authority, this Court should not discard or discount Redding's other violent and dangerous conduct and history and characteristics in fashioning an appropriate sentence, and it would be improper to leave for another case, or another judge, consideration of this information in determining a proper sentence.

In sum, Redding's history and characteristics support a sentence at the top of the sentencing guidelines. The nature and circumstances of the offense, and the history and characteristics of the defendant weigh heavily in favor of a sentence at the top of the guidelines. Redding is not a run-of-the-mill felon in possession of a firearm, and he shouldn't be sentence as if he were.

2. **The need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, protection of the public, and rehabilitation).**

A sentence at the top of the guidelines is consistent with the essential goals of sentencing. Such a sentence emphasizes the serious nature of the offense, and it will provide a just punishment for

Redding's criminal conduct. Perhaps most importantly, it will deter Redding from committing further criminal acts against the community—at least while in a custodial environment. During his incarceration, the Bureau of Prisons will provide Redding with any appropriate educational and vocational training.

## CONCLUSION

For the reasons argued above, the government requests that this Honorable Court sentence Edward Redding to a 37-month term of incarceration, the top of the guideline range.

                                                    Respectfully Submitted,

                                                    JEROME F. GORGON JR.
                                                    United States Attorney

                                                    s/*Andrew R. Picek*
                                                    Andrew R. Picek
                                                    Assistant United States Attorney
                                                    211 West Fort Street, Suite 2001
                                                    Detroit, Michigan 48226
                                                    313-226-9652
                                                    andrew.picek@usdoj.gov

Dated:  January 6, 2025

## **CERTIFICATE OF SERVICE**

      I certify that on January 6, 2025, I electronically filed this motion for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record.

                                        */s/ Andrew R. Picek*
                                        Andrew R. Picek
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Eastern District of Michigan
                                        211 West Fort Street, Suite 2001
                                        Detroit, Michigan 48226
                                        (313) 226-9652
                                        andrew.picek@usdoj.gov