UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                CR. NO.  25-20393

     v.

                                   HONORABLE ROBERT J. WHITE

EDWARD REDDING,

                    Defendant.

_____/

## EDWARD REDDING'S SENTENCING MEMORANDUM

Edward Redding will be sentenced by this Court on January 13, 2026, having entered a guilty plea to one count of Felon in Possession of a Firearm.  Mr. Redding has one prior adult criminal conviction, sustained when he was 16 years old.  He spent 11 years in custody on that matter and was released in July 2022.  Two months later, in September 2022, he was arrested for conduct giving rise to the instant federal case and returned to MDOC custody on a parole violation for 22 months.

Much of the Government's Sentencing Memorandum is spent discussing allegations from April 2025 which have not led to criminal charges or convictions.  The Government asks this Court to take these allegations into account in deciding Mr. Redding's sentence in *this* case, which involves unlawful possession of a firearm from 2022.  While it is true that this Court can consider a multitude of information related to a defendant's history and characteristics at sentencing, that consideration must be

rooted in the concept of fairness.  Here, Mr. Redding has been charged with one aspect of the allegation from April 2025 – he faces a charge of Fleeing and Eluding Police, which is pending in Wayne County Circuit Court.  Wayne County could have obtained a writ for Mr. Redding at any point during the past year but chose not to, making it impossible for him to obtain counsel in that case or address that charge.  Charges for the other alleged criminal conduct from April 2025, related to the deaths of three individuals and a separate act of firearm possession, have not been charged, again, making it impossible for Mr. Redding to address those allegations.

The PSR calculates Mr. Redding's advisory guideline range as 30 to 37 months.  Mr. Redding has no objections to the PSR.  As explained below, Mr. Redding requests a sentence of 10 months, which, when combined with the 22 months that he has already served for this same offense conduct, would yield a total punishment of 32 months in custody.  A sentence of this length is sufficient to meet the goals of 18 U.S.C. § 3553(a) – punishment, deterrence, protection of the public, and rehabilitation.

**SENTENCING CONSIDERATIONS**

**I.**      **Legal Standard**

At sentencing, courts must consider the §3553(a) factors, "make an individualized assessment" and address how the facts relate to those sentencing purposes.  *Kimbrough v. United States*, 552 U.S. 85, 49-50, 53-60 (2007); *Pepper v. United States*, 131 S.Ct. 1229, 1242-43 (2011).  The "overarching duty is to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing.'"

*Kimbrough*, at 101; *Pepper* at 1242-43.  This "parsimony provision" isn't simply a factor to be considered in determining the sentence; it represents a limit the Court is statutorily prohibited from exceeding—even when a greater sentence is recommended by the sentencing guidelines. *United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006).  While the sentencing guidelines are a starting point, they are but one consideration. *See Gall v. United States*, 128 S.Ct. 586, 596-97 (2007).

## II.     Mr. Redding's History and Characteristics

Edward Redding is 30 years old.  Born in Detroit, he was raised primarily by his mother and maternal grandmother.  See, PSR ¶ 39-41.  His father has been incarcerated since Mr. Redding was an infant, preventing any meaningful relationship between father and son.  Mr. Redding's mother was addicted to cocaine during much of his early life, resulting in his placement with his maternal grandmother from age 3 to 11.  Once he returned to his mother's home, he frequently faced a lack of sufficient food and clothing, and utilities were often nonfunctioning because his mother used her income for drugs.  PSR ¶ 41.

Left rudderless in a violent and crime-riddled neighborhood, it is unsurprising that Mr. Redding's contacts with the criminal legal system began when he was just 12 years old.  PSR ¶ 42.   During this time, he was abusing marijuana and alcohol regularly.  PSR ¶ 49.  He was a child – 14 years old – when he was first placed in a residential treatment facility.  When he was 15 years old, he was arrested for Carjacking, Robbery-Armed and Weapons – Felony Firearm.  At 16 years old, he was sentenced as an adult

to 11 to 22 years in MDOC custody on that case.  PSR ¶ 28.  Though initially held at youth facilities, at 16 years old, he was placed in the adult male prison population of the MDOC Thumb Correctional Facility, where he witnessed daily violence and felt he had to adapt to that environment simply to survive.

In total, Redding was incarcerated from the age of 15 through the age of 27.  He was on parole for two months in 2022 before returning to MDOC custody because of the instant offense conduct, which constituted a parole violation.  He was paroled again in July of 2024 and remained on supervision in the community until his arrest in April 2025 on charges of Fleeing and Eluding Police.  PSR ¶ 28.  That case remains pending in Wayne County Circuit Court.  PSR ¶ 35.

Mr. Redding attended high school prior to his 2010 arrest and received special education services.  While in custody, he completed his GED certificate.  PSR ¶ 50.  While on parole in the community he worked at two separate staffing agencies and consistently held down full-time employment.  PSR ¶ 52-54.

Despite his lengthy history of incarceration, Mr. Redding has maintained close ties to his family.  Several family members have reached out to check on Mr. Redding throughout the pendency of his case, and he remains in contact with family members despite his incarceration.  Tragically, Mr. Redding's paternal grandmother passed away on November 12, 2025, and due to his custodial status, he could not grieve her loss with his family.  All told, Mr. Redding has faced the loss of three close family members – his mother and both grandmothers – while alone in custody.  PSR ¶ 39, 41.

4

The Government urges this Court to consider alleged conduct from April 2025 as part of Mr. Redding's "history and characteristics."   Yet this information is uncharged, unproven, largely unknown, and is not properly considered Redding's "history."   The Government mentions "additional evidence" linking Mr. Redding to the most serious of the allegations – the murders – while ignoring the fact that Redding has not seen *any* evidence linking him to these allegations.   The information provided in the Government's Sentencing Memorandum relates to the presence of Mr. Redding's vehicle – not him – near the scene related to the homicide investigation.   The allegations are serious and beyond troubling – but they remain allegations, not even having risen to the level of a criminal charge at this time, despite the passage of nearly a year.   They should not factor into this Court's sentencing determination.

## III.   <u>Circumstances of the Offense</u>

In September of 2022, law enforcement officers on routine patrol saw Mr. Redding walking down the street and observed a bulge in his pants pocket, which they believed to be a firearm.   They stopped, investigated, and found a firearm under a vehicle parked near Mr. Redding's walking path.   Redding complied fully with the officers' demands that he stopped and submitted to a search and arrest without issue. He has admitted possession of the firearm and takes full responsibility. PSR ¶¶ 9-13

## IV.   **The Presentence Report and Applicable Sentencing Guideline Range**

The PSR calculated Mr. Redding's advisory guideline range as 30 to 37 months. There are no objections to the PSR.

## V.    Sentencing Factors under 18 U.S.C. § 3553(a)

Mr. Redding has already served 22 months in MDOC custody for this conduct. A sentence in this case of 10 months would result in a total punishment of 32 months in custody, which is "sufficient, but not greater than necessary" to achieve the sentencing goals of 18 U.S.C. § 3553(a).

Mr. Redding in no way minimizes the seriousness of his offense conduct.  He was newly released on parole, living in a violent neighborhood, and felt the need for self-protection.  He is not alleged to have been involved in any other criminal conduct at the time, nor is he alleged to have used the firearm in any threatening or assaultive manner.

Additionally, Mr. Redding will remain in custody on other pending matters for a significant period of time.  As stated earlier, he has a pending Fleeing and Eluding case in Wayne County Circuit Court, for which he has not yet appeared in court.  PSR ¶ 35. An MDOC parole detainer was filed in connection with the Fleeing and Eluding case as well as other alleged parole violations, which will undoubtedly result in another parole violation determination and additional years in custody.  Additionally, while sharing minimal information, the Government appears confident that Mr. Redding will be charged in connection with a homicide investigation in Wayne County, which will likely take additional years to resolve, and if Redding is convicted, will result in a lengthy sentence.

Mr. Redding's age at the time of his prior conviction - 16 years old - matters tremendously to how this Court views his history, as it occurred when he was a youthful offender, which the guidelines previously defined as extending through the mid-20s. *See* U.S.S.G. § 5H1.1. The Supreme Court has unequivocally stated that "youth matters in sentencing." *Jones v. Mississippi*, 593 U.S. 98, 105 (2021). This is the case whether a young man stands before a court or whether an older man faces punishment based in part on his youthful actions. The United States Sentencing Commission has explained:

> The inclusion of young adults in the definition of youthful offenders is informed by recent case law and neuroscience research in which there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average.

U.S. Sentencing Commission, Youthful Offenders in the Federal System, p. 5 (May 2017).[1] The research regarding age and culpability centers on the prefrontal cortex, which is the last part of the brain to develop. The prefrontal cortex influences "impulse control, emotional reactions, executive functioning and decision making." *Id.*, at p. 6. It is well-accepted that the prefrontal cortex is not complete by the age of 18, and most researchers acknowledge that development continues into the 20s, with 25 as the average age that full development has taken place. *Id.* at p. 7.

Without question, deterrence is of significant concern in this case, particularly given the prevalence of unlawfully obtained firearms in the metro Detroit area. In terms

---

[1] Available at https://www.ussc.gov/research/research-reports/youthful-offenders-federal-system.

of individual deterrence, a total punishment of 32 months in custody is significant, and in addition to a term of supervised release, will sufficiently deter Mr. Redding from future criminal activity.  He knows that once on supervised release, any violation of the supervised release conditions would likely result in a lengthy period of incarceration.

In terms of general deterrence, it is nearly impossible to evaluate the impact on an individual sentence on a community.  Even the Department of Justice recognizes that "The certainty of being caught is a vastly more powerful deterrent than the punishment."  National Institute of Justice, *Five Things About Deterrence* (Sept. 2014).[2] What this means is that the real fear or likelihood of being caught is preventative, not what happens to someone else who is caught and subsequently punished.  Conversely, if an individual does not believe that he or she will be caught for an offense, they are more likely to commit that offense, without regard for the likely punishment.[3]

In terms of rehabilitation, Mr. Redding will receive services during the remainder of his sentence and eventually while on supervised release.  Redding would benefit immensely from mental health treatment centered on Cognitive Behavioral Therapy. This therapy will assist him in positive decision making, impulse control, and planning for his future.  Cognitive behavioral therapy has been found to be more effective in reducing future criminal acts than punishment – even among individuals at a high-risk

---

[2] Available at https://nij.gov/five-things/Pages/deterrence.aspx.
[3] Valerie Wright, Ph.D.: *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment,* The Sentencing Project, November 2010) (*available at https://www.antoniocasella.eu/nume/Wright_2010.pdf*)

of reoffending.  Patricia Clark, *Preventing Future Crime with Cognitive Behavioral Therapy*, 265

National Institute of Justice Journal 22 (2010).    Despite his past challenges, Mr.

Redding has positive indicators – the support of his family and an employment history

– that provide hope for his future when he returns to the community.

## VI.    CONCLUSION

The goals of sentencing – punishment, protection of the public, deterrence, and

rehabilitation – will be met by a sentence of 10 months in custody, which, when coupled

with the 22-month punishment already imposed for this conduct, will result in a total

punishment of 32 months in custody.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

/s/ Nancy McGunn
Attorney for Edward Redding
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5845
Nancy_mcgunn@fd.org

Date: January 7, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send any

required notification to opposing counsel.

Dated: January 7, 2026                    /s/Nancy McGunn